No. 51.—THOMAS F. PERSONS, plaintiff in error, *vs.* HENRY HIGHT, defendant.

Per LUMPKIN, J.

[1.] The Act of 1842 to compel parties plaintiffs in the several Courts of this State, when the plea of usury is filed, to discover on oath the truth or falsehood of the facts stated in the plea, applies sa well to the Executors and Administrators as the original parties.

[2.] If the plaintiff files his written affidavit in terms of the Statute, but fails to discover the usury charged in the plea, from inability to do so; this does not authorize the affidavit of the defendant to be read on the trial.

Per NISBET, J.

[1.] The Act of 1842, which authorises a defendant to call upon a plaintiff in action upon a usurious contract, to discover upon oath the truth of the facts as to the usury set forth in his plea, &c., applies to parties who sue and are sued as representatives, as well as to the original parties to the contract.

[2.] *Held*, that under the Act of 1842, the oath of a plaintiff, which states, "that the facts set forth in the defendant's plea, as to the usury, are not true, and that there was, and is no usury in the contract upon which the suit is brought," is a compliance with the requirements of that Act; and that upon the filing of such an affidavit, the affidavit of the defendant in support of his plea, cannot be admitted.

[3,] *Held* that the insufficiency of the plaintiff's affidavit to prove the facts stated in the defendant's plea as to the usury ; is not the criterion upon which the defendant's affidavit is to be admitted—and that the only contingency upon which it can be admitted is the *failure* or *refusal* of the plaintiff to discover the truth of the facts set forth in his plea as to the usury, and whether or not there is usury in the contract sued on.

Per WARNER, J. Dissentiente :

[1.] The Act of 1842, " to compel parties, plaintiffs, in the several Courts of this State, where the plea of usury is filed to discover on oath, the truth or falsehood · of the facts stated in the plea," requires just such a discovery from the plaintiff, as he would have been required to make to a bill for discovery on the Equity side of the Court.

[2.] Suits brought by Administrators are within the provisions of the Statute.

Assumpsit, &c. in Warren Superior Court, tried before Judge SAYRE, April Term, 1848.

The following Bill of Exceptions, upon which error was assigned, will disclose the facts of this case :

THOMAS F. PERSONS, Adm'r.  }
        *vs.*         } Assumpsit in Warren Sup. Court.
HENRY HIGHT.  }

Be it remembered, that this cause came on for trial at the present April term, for the year Eighteen Hundred and Forty-Eight, and issue was joined upon the pleas of the general issue and usury.    Plaintiff, in support of his action, read in evidence a promissory note, in the word and figures following :
$2660, 83.

One day after date, we, or either of us, promise to pay John Persons, or bearer, the sum of Twenty-Six Hundred and Sixty dollars, $\frac{83}{100}$ cts., for value received of him this the 6th of September, 1843.             HENRY HIGHT,
                      FIELDING HILL.

*( Reverse.)*

January 16, 1845.    Then received One Hundred and Eleven Dollars and Sixty-Four Cents on the within note.

Received One Hundred Dollars on the within note.    February 9, 1846.

Plaintiff then closed his case.    Defendant then opened his case, by reading his pleas, and offered in evidence in support of the

truth of the plea of usury, his affidavit according to the provisions of the Act of 1842, which was in the words following:

GEORGIA, WARREN COUNTY:

Personally appeared before me Henry Hight, the defendant, in the above stated case, who, after being duly sworn, deposeth and saith that the facts set forth in the foregoing plea, as to the usury therein pleaded, are true,    HENRY HIGHT.

Sworn to and subscribed before me, 5th April, 1847.

JACOB A. H. REVIERE, J. P.

The plaintiff, by his counsel, objected to the reading of the affidavit, and the plea of usury, on the ground that suits brought by Administrators, upon promissory notes given to their intestates, were not embraced within the provisions of the Act of 1842, but that the proof as to the usury must be as at Common Law. The Court overruled the objection, and decided that suits brought by Administrators, were within the provisions of the Act of 1842; to which decision the plaintiff, by his counsel, excepted.

The counsel for plaintiff then offered in evidence, in compliance with the provisions of said Statute, on his part, an affidavit, in words and figures following:

GEORGIA, WARREN COUNTY—

THOMAS F. PERSONS, Adm'r.    } Assumpsit in Warren Sup. Court.
    *vs.*                     }         Plea of Usury.
HENRY HIGHT.                  }

Personally came before me, Thomas F. Persons, Administrator, and plaintiff in above stated case, who, being duly sworn, deposeth and saith on oath, that the facts set forth in defendant's plea, as to the usury, are not true—and that the contract sued upon is not usurious, according to the best of his knowledge.

T. F. PERSONS.

Sworn to and subscribed before me, this April 3, 1848.

JESSE M. ROBERTS, J. I. C.

The court ruled that said affidavit was in compliance with the Statute, and ordered the same to be read to the Jury, which was done; the defendant then offered in evidence, an affidavit of plaintiff's, made upon the first trial of said case, which is in the words and figures following:

THOMAS F. PERSONS, Adm'r.   }
    *vs.*                    } Assumpsit in Warren Sup. Court.
HENRY HIGHT.                 }

GEORGIA, WARREN COUNTY:

Before me, a Justice of the Peace, in and for said County, per-

sonally came Thomas F. Persons, plaintiff in the above stated case, who being duly sworn, deposeth and saith upon oath, that as to the facts set forth in the defendant's plea, as to the usury, he cannot state nor know whether the same are true or not, &c. distinctly, that he does not know they are true; and he does not know that the contract upon which said suit is brought is usurious.                                         T. F. PERSONS.

Sworn to and subscribed in open Court, 5th April, 1847.

JAMES PILCHER, Cl'k.

The counsel for plaintiff objected to the reading said affidavit to the Jury; the Court overruled said objection, and decided that said affidavit should be read—to which decision of the Court, the plaintiff, by his counsel, also excepted.   The defendant then again offered in evidence, his aforesaid affidavit in support of his said plea of usury; and as evidence of the truth of the same; to the reading of which to the Jury, the plaintiff by his counsel objected, on the ground that it was not competent for the defendant to support his plea by said affidavit, after plaintiff's affidavit, as aforesaid, had been produced and read to the Jury; the Court overruled the objection, and decided that said affidavit should be read to the Jury as evidence in support of defendant's plea of usury; which was done; to which reading, decision and judgment of the Court, the plaintiff, by his counsel, excepts, and alleges the same to be erroneous.   The case was here closed.   The counsel for plaintiff then requested the Court to charge the Jury as follows:

First, That the plea and affidavit of defendant are not evidence before them, that there was usury in the note, the subject matter of dispute between the parties, the plaintiff having filed and given in evidence his affidavit, in compliance with the provisions of the Statute.

Second, That the defendant having introduced no evidence to sustain his plea of usury, the plaintiff is entitled to recover the amount of his note, and interest.   The Court declined to give such instructions, to which decision of the Court the plaintiff, by his counsel, excepts.   The Court then charged the Jury as follows:

" The judgment against Wilder & Hight, in October, 1840, formed the basis of the note.   No inquiry can be made into the negotiations between the parties beyond the date of that judgment. If that was really the basis of this debt, now in suit, no usury can be shown beyond the date of the judgment; but, if since that time,

in the different negotiations and renewals of the debt by note, more than eight per cent. has been included in the notes so renewed, as a promise for indulgence, then only the original amount of the judgment should be considered as the debt, without any interest—deducting the payment and adding $313, a new loan admitted in the plea.

As to the affidavits of the parties, Persons & Hight, the Act of 1842, is to my apprehension, crude and difficult of construction; but my opinion is, that when the plaintiff, on the requisition of the defendant, makes his affidavit as to the matter of the plea, and fails to make any disclosure as to the facts stated in the plea, but is merely negative in its character, it is competent for the defendant to read his affidavit as to the facts; that it is admissible evidence to be submitted to the Jury, like other evidence in the case, and, of course, the credibility of that evidence is exclusively for the consideration of the Jury. Now, if, from the evidence before you, you believe there has been usury in the negotiations between the parties in the renewal of notes, since the date of the judgment, the plaintiff is entitled to recover only the amount of the judgment increased by any money loaned to the defendant since the judgment; but if there is no usury in the transaction, plaintiff is entitled to a verdict for the balance due upon the note, as it is in evidence before you.

To which said charge, the counsel for plaintiff excepts, so far as it instructs the Jury that the affidavit of the defendant was evidence, for their consideration, in support of his plea of usury. The Jury found in favor of the plea of usury. To the several rulings, decisions and judgments of the Court, as aforesaid, heretofore excepted to, the plaintiff by his counsel here now again excepts, and prays that his Bill of Exceptions may be certified and signed by the presiding Judge. F. H. Cone,
Jos. W. Thomas,
Geo. Y. Neal,
Plaintiff's Attorneys.

Georgia, Warren County:

I, Nathan C. Sayre, Judge of the Superior Court of the said State, presiding in said county of Warren, do certify the foregoing Bill of Exceptions is true and consistent with what took place on the trial of said cause. Nathan C. Sayre,
Judge Superior Court presiding in Warren County.
April 6, 1848.

Persons *vs.* Hight.

Jos. W. Thomas and Cone, for plaintiff in error.

Wm. Gibson and L. J. Gartrell, for defendant.

Thomas, for plaintiff in error, submitted—

1st. That under the Act of '42, defendant's affidavit and plea cannot be used as evidence until plaintiff has refused to discover. *Stat. of* 1842, *Pam.* 178. *Constitution of Georgia, Art.* 1 *Sec.* 17.

2d. That the plaintiff did not refuse to discover.

3d. That plaintiff having made his affidavit, defendant could not have resorted to his own affidavit, but only to cross-examination of plaintiff. *Act of* 1842.

4th. The defendant's affidavit having been improperly admitted, he was in fact without evidence of the truth of his plea.

Gartrell, for defendant in error, submitted the following points and authorities.

1st. That the Act of 1842, compelling a discovery of usury, is general and comprehensive in its terms, and applies as well to suits by Administrators, as to suits between the contracting parties. *See Act of* 1842.

For the rules of construction of Statutes, see *Ezekiel vs. Dixon,* and authorities there cited.

2d. If the Act of 1842 is held to apply to suits by Administrators, then they must make a discovery ; and failing to do so, the defendant's plea and affidavit is evidence of the usury.

The affidavit of plaintiff makes no such discovery as the Act contemplates.

In a Court of Equity, the affidavits would be held insufficient, and a failure or refusal to answer. See 3 *Equity Dig.* 12. 5 *John. R.* 247.

To a bill charging usury, an answer that defendant does not know or remember, will be considered evasive and tantamount to an admission. 3 *Equity Dig.* 6, 13, 15. *Scotts vs. Hume, Litt, Sel, Cases,* 379.

3d. The Act of 1842 establishes new rules of evidence on the

subject of usury, and goes beyond the principles of force, in cases of bills for discovery, prior to the passage of said Act.

4th. It was proper to admit all the affidavits to go to the Jury, as they are the judges of the evidence.

5th. When judgment is had on exceptions, or demurrer, and defendant is compelled to answer, the question is settled and cannot be raised for judgment again. No difference in compelling and permitting to answer.

The preamble of an Act will not restrain the body.

Cone, counsel for the plaintiff in error, in conclusion.

1st. The Act of 1842 being in derogation of the Common Law, is to be construed strictly. *Pamphlet Laws,* 178.  2 *Kelly,* 252. 3 *Ib.* 146.

2d. A law that sanctions the dangerous principle of permitting a party to be a witness for himself in his own cause, is not to be extended to any case not clearly embraced within its provisions.

3d. The case of a suit brought by an Administrator upon a contract made with his intestate, is not within the provisions of the Act.

4th.  Admitting, however, that it is, the plaintiff complied with the law by making his affidavit, as set forth in the Bill of Exceptions.

5th. Where the plaintiff makes his affidavit, in compliance with the requirements of the Statute, and the same is read as evidence to the Jury, it is not competent for the defendant to read his own affidavit as evidence.

The Court not agreeing in its judgment, the opinions of the Judges were delivered *seriatim.*

*By the Court.*—Lumpkin, J. delivering the opinion.

Thomas F. Persons as Administrator of John Persons, deceased, brought an action of Assumpsit in the Superior Court of Warren county, against Henry Hight, on a joint and several promissory note, given on the 6th of September, 1843, by the defendant and one Fielding Hill, then in life, since deceased, for $2,660 83 payable one day after date, with a credit of $111 64, indorsed 16th January, 1845, and a further payment of $100, entered the 9th February thereafter.

To this suit, the defendant pleaded usury, setting forth, in his answer, fully and minutely, the facts of the transaction, and gave notice thereof, according to the provisions of the Act of the General Assembly, passed the 28th December, 1842.

The record does not disclose very clearly what transpired on the first trial. It appears, however, that the defendant verified his plea—that the plaintiff filed his affidavit also, alleging that he could not state, neither did he know, whether the plea of the defendant was true or not; nor was he cognizant of the usury which was charged to exist in the contract. A verdict was rendered for the plaintiff for $1,859 06, with cost of suit, from which the plaintiff appealed, and a bill of exceptions is predicated upon what took place on the final trial.

The plaintiff read his note and rested his case with the Jury.— The defendant then offered in evidence, his own affidavit in support of his plea, to the reading of which the plaintiff objected, upon the ground that the Act of 1842, to compel parties plaintiffs, where the plea of usury is filed, to discover, on oath, the truth or falsehood of the facts stated in such plea, did not apply to the representatives of deceased persons, but to the original parties to the contract only. This objection was overruled, and thereupon counsel for the plaintiff excepted. Counsel for the plaintiff then tendered in evidence, the affidavit of the plaintiff, in which he swears, " that the facts set forth in the defendant's plea, as to the usury in the note sued on, are not true ; and that the con tract was and is not usurious according to the best of his knowledge." The Court ruled that said affidavit was in compliance with the statute, and ordered the same to be read to the Jury, which was done. The defendant next offered, in eviednce, the affidavit of the plaintiff, made on the first trial, as heretofore stated, the reading of which was objected to by counsel for the plaintiff, but allowed by the Court, which decision was excepted to. The defendant next offered his own affidavit in support of his plea, which was objected to, but admitted—whereupon counsel for the plaintiff excepted.

The case here closed, and the Court was requested, by counsel for the plaintiff, to charge the Jury that the plaintiff having filed his affidavit in compliance with the law, the affidavit of the defendant was not evidence before them of the truth of his plea : and that the defendant having failed to introduce any proof in support of his plea, the plaintiff was entitled to recover the whole

amount of his note, with interest thereon. But the Court declined to charge the Jury as requested, and on the contrary, instructed them, "That the Act of 1842 was crude and difficult of construction. But that when the plaintiff, on the requisition of the defendant, makes his affidavit as to the matter of the plea, and *fails to make any disclosure as to the facts stated in the plea, but is merely negative in its character, it is competent for the defendant to read his affidavit to the facts.*" The special Jury returned a verdict for $1993,70, with costs. And for the refusal of the Court to charge as requested, as well as on account of the instructions given, the counsel for plaintiff excepted.

This is not a fit occasion to discuss the policy or impolicy of usury laws; or to review the discordant opinions of the advocates for and against the liberty of the citizen to make his own terms in money matters, as in all other bargains. Perhaps there is no one subject about which the variable minds of men have differed so irreconcileably. One class of political economists, treat all legal restraints upon lending and borrowing, as the relics of by-gone days of ignorance and superstition, and resting for their support and justification, upon no intrinsic worth. They affirm that such regulations exist, merely because they have heretofore existed, and rely mainly upon the authority of Aristotle, who contended that money ought not to bear interest, because it was naturally barren and unproductive; or of Moses, the Jewish Lawgiver, who forbade this practice among his countrymen. They insist that all restrictions are inexpedient—that they enhance the rate of interest, thereby defeating their own object. That capital, like corn and all other commodities, should be governed by the condition of the market; its price, like every thing, to be controlled by demand and supply. At the head of the *free traders*, in money matters, stands conspicuously the name of Jeremy Bentham, whose work against all usury laws, published in 1837, it is believed, has produced a powerful impression, both upon the legislation of Great Britain and of this country, since that period.

On the other hand it is urged, that these views of Bentham and others, are visionary, and at variance with experience and the fundamental maxims of every well regulated State. That previous to the reign of Henry VIII. when the rate of interest was established at 10 per cent., the customary rates were 40 per cent. That Hindostan and China are both *free trade* countries in money

matters, and that the usual rate of interest in the one is 20, and in the other 24 per cent.   That Greece and Rome, like most other countries, had tried the *free trade* system, and like them, had abandoned it, finding that its tendency was to monopolize all the riches in the land in the hands of those who never worked for their wealth, and to the utter impoverishment of all the industrial trades and employments.   That, so exorbitant were the exactions of the usurers of Rome particularly, that it frequently convulsed the State with the most disastrous revolutions.   That but for the existing laws, the world would be continually plunged in the most ruinous speculations.   That money is different from all other articles of merchandize.   That these are the product of individual labor and enterprize, while money is brought into existence by the government.   And that the object of its creation is to benefit the public and not to foster private emolument.   That on this account, the State posesses the right, in a peculiar manner, to prevent the currency and circulating medium, designed for the good of the common country, and whole community, and which is the representative of the value of any species of property, to be used or perverted from its original design and legitimate purpose. That the essential difference between money and merchandize, of whatever species, is this : All need, and must have, money ; nothing else will pay taxes and other public dues, or is a lawful tender for debts ; and hence, a scarcity here is felt by all.   And yet the amount, both of specie and of paper, is necessarily limited—whereas, any other commodity is indispensible to no one.   One community or individual requires one thing, another something else ; and the wants of all, in these respects, may be supplied by some substitute.   If the potato crop in Ireland, or the wheat harvest in any other portion of Europe, fails, an immediate substitute is found in the abundant productions of this country, which is destined to become the granary of the world.   Hence, the laws of Commerce interpose, to keep down prices.   Moreover, it is contended that experience, as well as the general voice of the civilized world, ancient and modern, combine to condemn usury. *Non nostrum tantas componere lites.*

In this, as in all other controversies, where extreme opinions are entertained, the truth, perhaps, will be found ultimately to lie in a middle course, *medio tutissimus ibis.*   I have abridged a few of the leading arguments for and against usury laws.   And while I am not prepared to hold with Lord Bacon, that the usurer is

the greatest Sabbath-breaker, because his plough goeth every Sunday; and that he is the drone that Virgil speaketh of: " *Ignavum fucos pecus a præsepibus arcuit :*" much less that the guilt of taking money in the way of usury, is equal to the guilt of taking life; and that usurers should justly be ranked with murderers, and their bodies denied the rites of sepulture. Still, I am far from approving the total abolition of all laws upon this subject. Indeed, I am entirely satisfied, that usury laws are founded in great principles of public policy. I sincerely desire, that some means may yet be devised to suppress the evil, without encouraging the borrower to violate his contract. In my humble opinion, *borrowers as well as lenders*, should be deterred alike from engaging in this illegal and forbidden traffic. Besides, I must think, that in a contest between the indorsee of a usurious note, who had no agency whatever in the corrupt transaction, and the borrower, who is unquestionably, in morals, if not in law, a *particeps criminis*, the loss should always fall on the borrower.

All these grave questions, however, address themselves to another department of the Government. So far, the Legislature of this State seems to have acted upon the principle, that all private inconvenience must yield to public considerations. And in this conviction, the Statute of 1842 was enacted. It was passed, no doubt, *to prevent usury.* And it is, to all intents and purposes, a *remedial Statute.* It was intended to relieve the borrower from the expense and delay of a proceeding in Chancery to obtain discovery; and likewise, from the operation of the rule in Equity, that the borrower should *do* equity, before he could be heard; that is, pay up the principal and lawful interest which he admitted to be due. And I am ready and willing, in the utmost good faith, to give force and effect to the law.

It purports to be an Act " to compel parties plaintiffs, in the several Courts of this State, where the plea of usury is filed, to discover on oath the truth or falsehood of the facts stated in the plea; or to allow the defendant, in case of *refusal* on the part of the plaintiff, to establish the facts contained in his plea, by his own oath, without filing a bill for discovery.

Section 1, declares, " That in all cases in the several Courts in this State, where usury shall be pleaded, the party plaintiff in such case, upon notice of such plea, accompanied by a copy of such plea, and which shall be served on said plaintiff, his agent or

attorney, within one month from the filing of such plea of the case, in the Superior or Inferior Court, and within ten days, if the case is in any Justice's Court, or any other Court, discover on oath by his written affidavit, to be made before some officer legally authorized to administer an oath, whether the fact or facts, set forth in said plea, are true as to the usury, and whether or not the contract upon which said suit is brought, was usurious, and such written affidavit may be read in evidence, on the trial of said case, by either party."

Section 2d. "That if any party plaintiff shall fail or refuse to make the discovery as provided in the first section of this Act, that the party defendant in said case, may make an affidavit in writing before any officer authorized to administer an oath, of the truth of the facts set forth in his plea as to the usury therein pleaded, and said affidavit of the defendant, may be read on the trial by either party to said case."

Section 3d. "That the party whose affidavit is used as evidence, as provided in the first or second sections of the Act, shall be put upon the stand and cross-examined by the other party as witnesses." *Laws*, 1842, *p.* 178.

Two questions are made by the record, as to the interpretation of this Statute.

[1.] First, is it restricted to the original payee of the note ? or does it apply also to his legal representative, who may sue thereon after his death ?   Secondly, if the plaintiff fails to discover the usury set forth in the plea, from want of knowledge of the fact, does that authorise the defendant to read his own affidavit on the trial in support of his plea?   The Circuit held—

1st. That the Act applied as well to administrators as to the original contracting party.  And,

2d. That the plaintiff failing from ignorance or any other cause, to discover the usury set forth in the plea, entitled the defendant to introduce his own oath to the Jury, to sustain his defence.

This Court has in several cases, particularly in *Ezekiel vs. Dixon*, 3 *Kelly*, 14, announced the general rules by which it will be guided in the construction of Statutes; and I am happy to add, that they seem to have secured the general acquiescence and approbation of the profession.   The current of authority in this country, at least at the present day, is in favor of reading Statutes according to the natural and most obvious import of the lan-

guage, without resorting to subtle and forced constructions, for the purpose of either limiting or extending their operation. The words of a Statute, says Chancellor Kent, if of common use, are to be taken in their natural and ordinary signification; and this is now received as an elementary rule. 5 *Hill,* 538. Let us test the Statute under discussion by this doctrine.

It applies expressly to *all* "parties plaintiffs;" whether the original payee or his legal representative; and it is right that it should. The transferee of a usurious contract, or the executor or administrator of the deceased payee, may be fully acquainted with the terms of the agreement, either from having been present at its execution, or from information derived directly from the party himself; and in either case, he should be compelled to testify. We are clear, therefore, in coming to the same conclusion upon this point, at which the learned Judge arrived, who delivered the opinion of the Court below.

[2.] We are not able, however, to concur with our brother Sayre upon the other proposition; namely, that the plaintiff having filed his affidavit in compliance with the provisions of the Statute, but failing to discover the usury, from inability to do so, entitled the defendant to read, and rely on his own oath before the Jury, in support of his plea. It is the opinion of this Court, that this privilege is only allowed the defendant, when the plaintiff neglects or refuses to testify; but never, we apprehend, when he makes oath in terms of the law. If the *second section* of the Statute authorized the introduction of the defendant's own oath, because the plaintiff failed from want of knowledge, to discover the facts set forth in the plea, it would be palpably unconstitutional, as containing matter different from what was expressed in the title of the Act, which only permits the defendant to establish his plea by his own oath, *in case of refusal by the plaintiff to swear.* The *failure,* therefore, contemplated in the *second section,* is either equivalent to *refusal,* or else that part of the Act is void, for the reason already stated. The meaning of the Legislature seems to be this: if the plaintiff makes oath, that the fact or facts set forth in the plea as to the usury are *not* true, and that the contract upon which the suit is brought, is *not* usurious; there is an end of the matter, unless the defendant see fit to put the plaintiff upon the stand and cross-examine him as other witnesses. If, however, he refuse to testify, which may be indicated, either by some

overt act or his failure to file his affidavit, then the defendant, by way of penalty upon plaintiff and protection of himself, is granted the extraordinary right of sustaining his defence by his own oath. Surely the framers of the Act never could have intended that this anomalous privilege should be guaranteed to the debtor of a dead man's estate, because the administrator is ignorant of the usury with which the contract sued on is alleged to be tainted; and *therefore fails* in his affidavit to discover the fact or facts set forth in the plea. A Bill for discovery would secure no such benefit. If the answer of the defendant denies all the allegations in the Bill as to the usury, the complainant must seek proof, *ab extra*, to make out his defence.

Whether the deposition of the administrator was sufficiently ful, it is wholly unnecessary to determine. The presiding Judge decided that it was; and having so ruled, he ought, as we think,, to have excluded the affidavit of the defendant. Both should not have gone to the Jury. Even were it defective, that would not have justified the introduction of the defendant's affidavit. For again analogizing this Common Law remedy, to a proceeding in Chancery; if the answer to a Bill for discovery be insufficient, the complainant is not *therefore* entitled to take the Bill *as confessed*, and proceed to trial *ex parte*. He can only do this under the rules in Equity, when the defendant remains *in contempt* after due notice. The complainant's course is to *except* to the answer, and if it be found imperfect, the defendant, will be required to answer over. It would be a monstrous doctrine, to hold that where the plea, as in this case, contains a great variety and multiplicity of facts, that the failure of the plaintiff to answer each and all of them, whether from inadvertence or otherwise, should subject him to the severe infliction of allowing the defendant to prove his own plea. Nor could he extricate himself from the difficulty in the present case, by *amending*, even if that were admissible under the Statute, inasmuch as he had the judgment of the Court that his affidavit was complete; to which decision, the other party did not except, as it was his right to do.

But suppose it be conceded, that the deposition of the plaintiff was defective, for the reason that it was not as an answer in Equity should be, fully responsive to *all* the facts charged as to the usury; or that the affiant did not deny the usury in the contract, to the best of his *belief* as well as knowledge, as I am inclined to

think he should have done ; or from any other cause : and that
it was not amendable.    Can this Court on a writ of error, sit in
judgment upon this deposition, and justify the admission of the
defendant's oath upon the ground that the *plaintiff's* was not in
terms of the Act, notwithstanding the presiding Judge decided
that is was?    If I rightly understand the organization of this
Court, it was the intention of the Act calling it into being, that
it should be strictly an *appellate* Court for the re-examination and
correction of erroneous decisions *actually made* by the Superior
Courts; and its success as well as usefulness, will depend upon
its being able satisfactorily to accomplish the work which has
been given it to do.    I would not affect to undervalue the right
of appeal which it affords, and should be most unwilling improp-
erly to restrict or limit its exercise.    Such I believe will not be
the effect of the construction which is here put upon our powers.
The Superior Courts can commit no error which may not be
reached here, if the party below present the question in the prop-
er shape, and at the right time, for their decision.    In this case, the
defendant in error might have excepted to the judgment of the
Court below, as to the sufficiency of the plaintiff's oath.    Failing
to do so, he must be considered as having acquiesced in it; nor
can it now be reached and reversed, for the purpose of justifying
the admission of his affidavit.    Not merely our own convenience,
but the paramount interest of the country requires, that we
should not only *hear*, but promptly *determine* also, all the causes
which may be carried up from the Superior Courts.    To prevent
this Court from becoming what it was feared it would be, and in
many of the States actually is—an engine of oppression, merely
from delay—I am inclined to think that it will be found expedi-
ent to confine our jurisdiction to *alleged* errors in the *decisions*,
*sentences, judgments* and *decrees* of the Superior Courts, as they
are exhibited in the Bill of exceptions, and transcript of the re-
cord before us.

What, I ask, was the object of the Act of 1842 ?    It was to al-
low the defendant to use the plaintiff as a witness, provided he
would submit to an examination.    It adopts, in substance, the pro-
visions of the Act of New York, passed in May, 1837, to prevent
usury, and which is as follows : " Whenever, in any action at law,
the defendant shall plead or give notice of the defence of usury,
and verify the truth of his plea or notice by affidavit, he may, for

the purpose of proving the usury, call and examine the plaintiff, as a witness, in the same manner as other witnesses are called and examined." *See L.* 1837, *p.* 487.    This Statute differs from ours in not authorizing the plaintiff to file his written affidavit, but subjects him, at once, to an *ore tenus* examination.    And to this extent, it seems to me, to be more efficacious.    If the object be to elicit truth, the whole truth, and nothing but the truth, much better to put the plaintiff upon the stand at once, and subject him to a *viva voce* examination.    How seldom is the plea of usury at law, established by the answer of the plaintiff to a bill filed for discovery.    So far from giving additional vitality and energy to the measure, by holding, contrary to the language of the Act, that the affidavit of the plaintiff ought, in analogy to an answer in Equity, "full, true, direct and perfect answer make to any allegation, &c." it would unquestionably weaken its force and effect, by compelling all plaintiffs to seek the aid of ingenious counsel, to assist in drawing their affidavits.    The Legislature have considered better of this matter.    They require a simple affidavit, *"before some officer legally authorized to administer an oath,* that the facts set forth in the plea, are, or are not, true, and that the contract, upon which the suit is brought, is, or is not, usurious."    And if he is not satisfied, the defendant may then, according to the *third section* of the Statute, and in the words of the New York Act, "call and examine the plaintiff as a witness, in the same manner as other witnesses are called and examined."    And what profit would it be to the defendant, to require that the affidavit of the plaintiff should correspond to an answer in Equity?    The terms of the usurious contract, and the quantum of the usurious interest or premium, must not only be specified in the plea, but distinctly and correctly set out.    And the defendant must prove the usury as laid; and if he fails in proving the usurious contract, in the way and manner in which he has charged it in his plea, he must fail.    *Comyn on Usury,* 203.    *Tate vs. Willings,* 3 *Durn. & East,* 538.    2 *M. & S.* 377.    2 *Show.* 329.    3 *Mod.* 34.    4 *Taunt.* 810. 6 *T. R.* 267.    If the plaintiff, therefore, means truly, in the terms of the Act of 1842, that the facts, as to the usury, as set forth in the plea, *are not true,* and the defendant is unable to establish them by *alunde testimony,* he must fail; and that, too, notwithstanding the plaintiff should distinctly admit, that the contract

was usurious, but set forth a different agreement from that stated in the plea.

But I repeat, that we should be cautious in putting a construction upon this Act, which would tend to dispense with the cross-examination of the party upon the stand, or which would necessarily substitute his well-pondered and ingeniously devised affidavit in lieu thereof. And I beg leave to avail myself of the very appropriate remarks of Judge Blackstone, in support of this view. " This open examination, in the presence of all mankind, the parties, their attorneys, the counsel, and all by-standers, and before the Judge and Jury, is more, much more conducive to the clearing up of truth, than the private and secret examination, taken down in writing before an officer, where a person may frequently depose that, in private, which he will be ashamed to testify in a public and solemn tribunal. There an artful or careless scribe may make a witness speak what he never meant, *by dressing up his depositions in his own form and language*; but he is here at liberty to correct and explain his meaning, if misunderstood, which he can never do, after a written deposition is once taken. Besides the occasional questions of the Judge, the Jury, and the counsel, propounded to the witness on a sudden, will sift out the truth much better than a formal set of interrogatories, (or plea,) previously penned and settled. Nor is the presence of the Judge, *during the examination*, a matter of small importance. For, besides the respect and awe which his presence will naturally inspire, he is able by use and experience, to keep the evidence from wandering from the point in issue. In short, by this method of examination, and this only, the persons who are to decide upon the evidence, have an opportunity of observing the quality, age, education, understanding, demeanor and inclination of the witnesses, in which points all persons must appear alike, when their depositions are reduced to writing, and read in the absence of those who made them. Frequently, as much may be collected from the manner as the matter of the witness." 3 *Black. Com.* 379.

And I take this occasion to say, that my youthful admiration of the commentaries of this great teacher, grows with advancing years. They well deserve the magnificent eulogy of a late biographer, who says, " they combine the copious learning of a Coke, and the methodical arrangement of Hale, Gilbert and Foster, with the smooth and flowing style of Pope and Addison."

The following appropriate and judicious remarks appear in the first Report of the Commissioners on Practice and Pleadings, under the amended Constitution of New York, on the subject of the examination of parties to the suit : " Two modes of examination have been proposed, one *oral*, and the other upon written inter-rogatories. The latter is the method of the Civil Law. We think the question is decided by the Act of December, and if it were not, we should still prefer the oral examination. A written deposition taken in private, is not the best means of eliciting the truth ; nor do we see why the law should be so tender of the consciences of parties, when it is so hard with the consciences of witnesses. These are brought into the Court—are made to waste their time about a matter not their own ; and when called to the stand, are subjected to the most searching, and often offensive, examination. Why should he who brought them there, be exempted from the same scrutiny ?" *Code of Practice, p.* 244.

Subsequent reflection and examination have confirmed our first impression upon hearing the argument upon the second point, in the Bill of Exceptions, which was, that the Court below erred in the construction which it put upon the Statute. It has been suggested, that the decision was misapprehended, and that the presiding Judge let in the affidavit of the defendant, because the oath of the plaintiff was insufficient. No such inference would appear to be warranted by the transcript before us. On the contrary, it shows conclusively that the affidavit was solemnly adjudged to be in compliance with the law ; and the only reason assigned for the introduction of the defendant's testimony, to establish his plea, is, that the affidavit of the plaintiff *failed to discover the usury*. And the Court is *unanimously* of the opinion, that the failure of the plaintiff to discover the usury, from inability to do so, is not a sufficient ground to admit the defendant's oath.

If we were in doubt as to what was the decision, (and for myself, I must, in justice to the learned Judge who made it, confess that I have none,) situated as this case is, it would become our duty to send it back for a re-hearing. The plaintiff in the action below, and who recovered some two thousand dollars, is the party who brings up this case ; consequently, it is he who will mainly suffer from the delay attendant on further litigation. As it is, we must reverse the judgment and remand the case, with instructions that a new trial be awarded, to be conducted in conformity

with the views entertained, and herein expressed, by this Court, as to the proper interpretation of the Act of 1842.

NISBET, Judge, concurring.

The Act of 1842 is in derogation of common right. It compels the party plaintiff to become a witness, in suits upon usurious contracts against himself; or to admit the defendant's oath in support of his own plea. At the time this Act was passed, this could not be done at Common Law in any other case. It gave a right to the defendant, and cast a burden upon the plaintiff, in this class of cases, unknown to all others. It established a new rule of evidence, and repealed a principle which in the Courts of that jurisdiction, had prevailed for centuries—the principle, that a party could not be called to testify in his own behalf. It cannot in my judgment, be viewed in the light of a Statute which creates a new remedy; for remedies against usurious contracts existed before; both at Law and in Equity. The plea of usury was allowed, before its passage, at Common Law and by our own Statutes; and a defendant could also go into Chancery, upon certain terms, to be relieved against usury. The plea of usury was available to the defendant, according to the general and well-approved rules of evidence; and the remedy in Equity was subject to established rules, regulating that subject matter in Courts of Chancery. It does not, therefore, ordain a remedy for a mischief before remediless; or means of enforcing a right, which could not be enforced by the existing law. Its object is indicated in the title. That object is to compel a party plaintiff to discover on oath, the usury in his contract; or, upon refusal so to do, to admit the evidence of the defendant in support of his plea of usury. It seeks to simplify, and to render more easily available, an existing remedy, by creating a new rule of evidence in the Courts of Common Law. I must view it therefore, as a Statute amendatory of the law of evidence.

The new rule of evidence which it ordains, is in derogation of common right; it is applicable alone to one class of cases, and *ought to be construed strictly.* The defendant should take nothing under it by implication, or inference. Nothing, save that which the Statute gives him by a strict but fair interpretation. I am willing to give him his pound of flesh, but with my consent,

he shall draw no blood. Whilst I know that it is the duty of this Court to give full effect to the legislative will, and whilst I am resolved to enforce all constitutional laws, I do not feel at liberty to go beyond the meaning of the Legislature, interpreted according to established canons, to give effect to what I may imagine to be the policy of the law. In a Court of Law, more particularly, I do not feel authorized to depart from those canons. Placed here, under the most solemn of all sanctions, to administer *the law* as it comes to me from the Legislature, I may not, under the idea of fostering any given policy, look outside of the law itself, to ascertain its meaning. A license to look away from the Statute to the policy of the State in enacting it, is the parent of Judicial legislation. Most heartily do I approve of the policy of our Usury Laws. They have worked well. I must say, at the same time, that the Legislature has gone quite far enough, in giving facility to the defence of usury. If the meaning of the Legislature in the Statute before us, was ambiguous, I should lean to that construction which would favor the policy. But it is not doubtful. In construing Statutes, the Common Law is to be considered. They are to be construed in reference to the principles of the Common Law ; for it is not to be presumed that the Legislature intended to make any innovation upon the Common Law, further than the case absolutely required. 1 *Kent*, 463. With such views of the Act of 1842, and guided by the usual rules of statutory construction, I proceed briefly to consider its more specific meaning, and its application to the case made in this record.

[1.] A question is made here, whether this Statute is applicable to parties, who sue and are sued in a representative character. The language of the Statute is general, and applies to *all cases*. There is no exception made ; nor is there any provision, which precludes the idea of representative parties being amenable to it. " In all cases in the several Courts in this State," is the language of the Act. The reason for calling upon an original party to the contract to disclose the usury, applies also to his representative ; although with greatly diminished force. It is to be presumed that an executor, or even an administrator, knows more of the contracts of the decedent, than the world at large. According to the Act, what he does know, the defendant is entitled to have disclosed, or to be let in to the benefit of his own oath.

Upon the first trial of this cause, it seems that the plaintiff made oath under the Statute, which was read. On the trial of the cause on the appeal, he made oath again, which was fuller, and which the Court ruled was in compliance with the Statute; and which being read by the defendant, as part of his testimony, the first affidavit was also admitted, at the instance of the defendant, for the purpose of impeaching the credibility of the plaintiff. We are all agreed that it was wrongfully admitted. The plaintiff was before the Court as the defendant's witness. He could not impeach his own witness. Had the affidavit of the plaintiff been adduced as evidence by the plaintiff himself, the case would have been different. Besides, the last affidavit was in compliance with the law. The previous affidavit was merged in that. The defendant getting what the Statute gives him, is himself restricted by all the rules applicable to him in a Court of Law. If he be entitled to impeach his own witness at all, it must be by authority of the Statute in its grant of power, to put the plaintiff after he has answered, on the stand for cross-examination; and must be exercised in that way, or not at all. At first view of the record, it would appear that the plaintiff himself tendered his affidavit in evidence, as testimony. This, however, he did not do. But tendered it to the defendant, in compliance with the Statute, and it being held by the Court in accordance with the Statute, it was read as evidence for the defendant.

The affidavit of the plaintiff, evoked under the Statute, is in the following words:

GEORGIA, WARREN COUNTY:

THOMAS F. PERSONS, Adm'r. *vs.* HENRY HIGHT. } Assum't, &c., in Warren Sup. Ct. Plea of Usury.

Personally came before me Thomas F. Persons, Administrator and Plaintiff in the above stated case, who being duly sworn, deposeth and saith on oath, *that the facts set forth in the defendant's plea, as to the usury, are not true*; and, *that the contract sued on, was and is not usurious*, ·according to the best of his knowledge.

T. F. PERSONS.

Sworn to and subscribed before me, 3d. April, 1848.

JESSE M. ROBERTS, J. I. C.

The Court, as before stated, held that this affidavit was in com-

pliance with the Statute ; and it was read at the same time he admitted the oath of the defendant in support of his plea.

[2.] I hold, with the Court, that the plaintiff's affidavit was in compliance with the Statute ; and because it was in compliance with the Statute, I hold that he erred in admitting the defendant's oath.   The presiding Judge went upon the ground, that in all cases occurring under the Statute, where the plaintiff's affidavit does not afford evidence sufficient to make out the defendant's plea, the defendant is entitled, by reason of that deficiency, to his own oath.   No other view of the Court's opinion can make it consistent; for he expressly held, that the affidavit was in compliance with the Statute.   From this view of the Statute, I must dissent.   Counsel who argued this cause for the defendant in error, maintain that the affidavit of the defendant was properly admitted by the Court ; but for a different reason from that which governed the mind of the judge.   They insist that the affidavit of the plaintiff, was *not* in compliance with the Statute, and, *therefore* the oath of the defendant was properly admitted.   They say, analogising the response of the plaintiff to the defendant's plea and notice, to the answer of a defendant in Equity, that a specific denial of the truth of the facts stated in the plea as to the usury, and a specific denial that there was and is usury in the contract, is not enough; that the plaintiff is bound to the same strictness as a defendant in Equity, answering the allegations of the complainant's Bill ; and that in all cases where the plaintiff's affidavit is not thus full and minute, it is not in compliance with the Statute, and if not, then the defendant's affidavit must be admitted.   My reply to the view, both of the Court and the counsel, will appear in the exposition which I now proceed to give of the Act of 1842.

I repeat that this Statute creates a new rule of evidence applicable to usurious contracts.   What is it ?·  It is that the plaintiff, in actions upon such contracts, where the plea of usury is filed, upon notice of such plea accompanied with a copy duly served according to the requirements of the Act, shall discover on oath in writing, *whether the fact or facts set forth in said plea are true as to the usury* ; *and whether or not the contract upon which said suit is brought was usurious.*   And further, that if the affidavit of the plaintiff, thus required, isused as evidence, the plaintiff himself shall be put upon the stand and cross-examined by the

·defendant. The Statute makes the plantiff a witness for the defendant. For what purpose is he a witness? Why, for the purposes disclosed in the Act—and that in no ambiguous terms. For the purpose of discovering on oath in writing, "whether the fact or facts set forth in the defendant's plea, are true as to the usury; and whether or not the contract upon which the suit is brought, was usurious." These are the two purposes for which his testimony in writing is required; and if to these two ends he does testify in writing, then he becomes for the defendant, a witness, to be examined on the stand, in the case, precisely as any other witness called for the plaintiff would be liable to cross-examination at Common Law. The rights of the defendant under this rule are, a discovery from the plaintiff in writing, whether the facts which he chooses to set forth in his plea as to the usury *are true*, and whether the contract, upon which he is sued, is or not usurious. These, in the first instance, are his rights. and no more.

If the plaintiff complies and his affidavit is read, then another right accrues to him, to wit, the right of cross-examining the defendant. These rights are created by Statute, are in derogation of common right, and are to be exercised in the way which the Statute prescribes, and in no other way ; they are to the extent prescribed in the Statute, and no farther. In executing this Statute, the Court must look to the rule as it is written bearing in mind that it is a rule of evidence. In relation to rules of evidence, the Courts should have no enlarging or restraining power. Upon nothing do the rights of parties more depend, than upon the certainty, steadfastness and distinctness of rules of evidence.

Suppose that the plaintiff does make discovery in compliance with the Statute, what guarantee, it may be asked, is there, that he discovers truly ? It is found in his liability to exposure by cross-examination, and to indictment and conviction for perjury, if he disclose not the truth; the only guarantee which the law affords for the fidelity of all witnesses.

[3.] The plaintiff is not compelled to testify at all under this Statute. It is optionary with him to make the disclosure or not. And if he *fail or refuse* to disclose, in the manner and to the extent which the Statute requires, then the defendant is permitted to testify in his own behalf; *that* is the contingency, and that

alone, upon which *his* affidavit may be read.     The 2d section of the Act provides, that " If any party plaintiff shall *fail or refuse* to make the discovery as provided in the first section of this Act, the party defendant may make affidavit in writing, before any officer authorized to administer an oath, of the truth of the facts set forth in his plea as to the usury therein pleaded, and said affidavit of the defendant may be read on the trial by either party to the case."     *Hotchkiss*, 572.

Whether the party plaintiff does fail or refuse to disclose as the Act requires, is for the Court to determine, upon a construction of the Act.     If there is no response at all, or an overt denial to answer, verbally or in writing, why, then, the duty is manifest and easy ; but if there be a response, then it is the duty of the Court to determine how far it is in compliance with the Act.     If it be in compliance with the Act, whether it prove much or little, or nothing for the defendant—or if it be altogether against his plea, as in the present case—he has got all the statute intended to give him. He has used the plaintiff as a witness, and his own affidavit cannot be read.     Nothing remains to him but the right to put the plaintiff upon the stand and cross-examine him.     The two words *fail* and *refuse*, in this Act, seem to me to mean substantially the same thing.     They contemplate a failure to come up, in whole or in part, to the requirements of the statute.     The main question then is, what in this regard, are the requirements of the statute ? If the plaintiff answers specifically to the several allegations of the plea, as fully as he would be required to do in Equity to the same allegations in a bill, he certainly may do so, and the answer would of course be a perfect compliance with the requisitions of the Act.     And I do not hesitate to say, that every plaintiff who could so answer, ought so to answer, if he answers at all.     If the plaintiff in his affidavit undertakes to answer specifically the allegations of the plea, and fails to answer any one or more ; or if it is appato the mind of the Court, upon the answer itself, that it is evasive, then I should hold that it is not such a discovery as the Statute contemplates, and the plaintiff would be held to answer over, and refusing to answer more fully or distinctly, the defendant would be entitled to his oath.     Nor do I suppose that a general disclaimer of knowledge in relation to the facts set forth in the plea, as in the first affidavit filed by this plaintiff, would be sufficient. In such a case, the same consequence would follow, to wit : the defendant might

testify in his own behalf. In all cases of defective discovery, upon its being so held by the Court, it is clearly the right of the plaintiff to amend if he can, and if he cannot, or will not, then the defendant's affidavit must be admitted. But how is it in the case made by this record? Was this affidavit a compliance with the statute ? If it was, the Court, in my judgment, erred in admitting the affidavit of the defendant. Judge Sayre thought it was, and admitted the affidavit of defendant, upon the ground that the plaintiff's affidavit was insufficient to establish his plea. I have undertaken to show, that the contingency upon which the defendant's affidavit can be read, is *alone* the failure or refusal of the plaintiff to discover, according to the requirements of the Statute. If that be the *sole* contingency upon which it is admissible, it was error to admit it on any other account, or for any other cause. Agreeing with him in his opinion as to the sufficiency of this affidavit, but dissenting from him in his consequent admission of the defendant's affidavit, I proceed to show why, in my opinion, the plaintiff's affidavit is in fulfilment of all that the Statute requires. It is a denial, in the very words of the Statute, of the truth of the facts stated in the defendant's plea, and a statement, in so many words, that there was, and is, no usury in the contract. The plaintiff swears, to the best of his knowledge, *that the facts set forth in the defendant's plea, as to the usury, are not true, and that the con'ract sued on, was, and is not usurious.* Here is a response to the two points of discovery made by the Statute—1st, as to the truth of the facts stated in the plea ; and 2d, as to the usury, generally, in the contract. There is, in the affidavit, no ambiguity, no evasion, no withholding of anything which the plaintiff knows. He answers, as though well informed of the transaction. The denial of the truth of the facts applies to each and all of the statements made in the plea. The plea is, as it ought to be, full and minute—a copy is served upon the plaintiff, and testifying in reference to it, he says the facts stated are not true. It would not have been more in compliance with the Act, if, taking the statements of the plea singly, he had given to each a distinct denial of its truth. If any one of those statements is true, within the knowledge of the plaintiff, he is guilty of perjury. But he is presumed to swear truly, until the contrary appears. The defendant has sifted his conscience—he has discovered what he knows of the whole matter, and it turns out that there is no usury in the con-

tract, and that not one of the numerous specifications in the plea is true. The defendant has had the benefit of making the plaintiff his witness, and that is what the law gave him. It is, perhaps, his misfortune, that, (as it sometimes happens in other cases,) the testimony of his witness is against him. Upon the assumption that the plaintiff swears truly, what more could he say? How could he amend his affidavit, so as to make it more satisfactory to the defendant, and still swear to the truth? Either the plaintiff has sworn truly or falsely. If truly, he has nothing more to say, consistent with truth. If falsely, then he is guilty of perjury, and liable to be convicted and punished. The idea insisted on by the counsel for the defendant, that this affidavit ought to be amended and made more explicit, to bring it within the requirements of the Statute, it seems to me, involves a necessity on the plaintiff, of stating what is not true, at the peril of subjecting him to the admission of the testimony of the defendant in his own favor. It does not seem to me that it is liable to exception. If the defendant has doubt of the *bona fides* of the plaintiff, he is entitled to the privilege of as searching a cross-examination, as his ingenuity or that of his counsel, can bring to bear upon him. And this right of cross-examination destroys the analogy between the procedure under this Statute, and the practice of a Court of Chancery. It is given, in lieu of *the exceptions* in Courts of Equity, to the defendant's answer. If the defendant may except to the plaintiff's answer, as the complainant may to the defendant in Chancery, where is the necessity of cross-examination? The right to amend his affidavit, when ruled insufficient by the Court, does not grow out of the privilege of the defendant to except; it is *his* privilege, in order to avoid the admission of the affidavit of the defendant.

It is said that the Legislature intended to give this defence at Law, instead of the more tedious and expensive mode of redress against usury in Equity; and therefore, it is the duty of the Court to give to it the same efficiency that the remedy in Equity has. And that, inasmuch as the affidavit of the plaintiff would be held insufficient as an answer in Equity, it is not sufficient here. It doubtless was the intention of the Legislature to give a remedy, so far as it goes, like that which a defendant has in Equity. But it is still a remedy at Law, to be pursued, so far as the Statute gives directions, according to its provisions, and so far as those di-

rections are imperfect, according to the course of the Common Law. If any of the rules in Equity, which govern this subject matter there, are to be imported into a Court of Law, why not import all? If the plaintiff is to be held to that strictness in his affidavit, which characterizes an answer in Chancery, by what authority is the defendant exempt from that strictness to which he would be held as a complainant in Equity? Why not, for example, before allowing him the benefit of this new rule of evidence at Law, require him, as in Equity, to pay or tender the principal and lawful interest of the debt! If we are to convert a Court of Law into a Court of Chancery, we must do in whole and not in part. We must deal out Equity to both sides. The truth is, that innumerable difficulties spring out of this blending of the two jurisdictions. It is expedient, in my view of the matter, that they be kept distinct. The proper administration of justice requires it. The rights of the people before our tribunals require it. Nothing is more painful to me, than this marring of the beauty of the law—this destruction of its symmetry and order—this confounding of jurisdictions; because, I think I see in it, ultimate injury to rights —rights which are better protected by the time-honored usages of the science, than by the simplifying processes of a recent day. I cannot believe that the Legislature intended, in this instance, to clothe our Courts of Law with any more powers than they have, in the Statute, *expressly* granted. To them, I am disposed to hold them. Believing that the affidavit of the plaintiff was in compliance with the requirements of the Statute, I am satisfied that the Circuit Judge erred in admitting the affidavit of the defendant.

WARNER, Judge, dissenting.

I regret that I cannot concur with the majority of the Court, in the judgment which has been rendered in this case.

Distrusting my own ability, as I always do when dissenting from my brethren, I will endeavor to express the grounds of my dissent.

This action was brought by Thomas F. Persons, Administrator tor of John Persons, on a promissory note, payable to the plaintiff's intestate, one day after date, for the sum of $2660 83, against the defendant, Henry Hight. The defendant filed a plea of usury, in

which he *specially* set forth the original sum loaned, the rate of interest, the renewals of the note, and the various transactions between the original contracting parties, with great precision and exactness, notice of which was duly served on the plaintiff, as required by the Act of 28th Decem. 1842. Before I proceed to notice the exceptions taken at the trial, I will give my views as to the proper construction of the Act of 1842. That Act was intended to be a *remedial* statute. " There are three points," says Blackstone, "to be considered in the construction of all remedial statutes; the old law, the mischief, and the remedy ; that is, how the old law stood at the making the act ; what the mischief was for which the Common Law did not provide ; and what remedy the Legislature hath provided to cure this mischief. And it is the business of the Judge so to construe the act as to *suppress the mischief and advance the remedy.*" 1 *Bl. Com.* 87.

How stood the *old law* in this State, prior to the Act of 1842 ? In all cases of usury, where the knowledge of the usurious transaction was confined to the contracting parties, (which was usually the case,) the party pleading the usury was compelled to go into a Court of Equity, and file a bill of discovery to obtain a disclosure of the facts stated in his plea, from his adversary. Before a Court of Equity would aid him to obtain a discovery, the party seeking such discovery was required to make a tender of the principal, and *lawful* interest due on the plaintiff's demand.

What was the *mischief* which the Legislature intended to remedy? Owing to the great pecuniary embarrassment of the country, it was extremely difficult, and in most instances impossible, for debtors to make a lawful tender, in gold or silver, of the principal debt and lawful interest, and the usurer obtained his judgment for the *whole amount* of his demand, and forced a sale of his debtor's property, in satisfaction of his *usurious* claim. What is the *remedy* which the Legislature intended to apply by the Act of 1842, to suppress and correct this evil? The Legislature intended that the plaintiff, when the plea of usury was filed, upon notice, should discover the *truth* or *falsehood* of the facts stated in such plea, in the same manner as he would have been required to do in a Court of Equity, had a bill been filed against him under the old law; and to relieve the defendant from going into a Court of Equity for such discovery, where he would be required to make a lawful tender of principal and interest.

The caption of the Act discloses the intention of the Legislature. It is entitled "An Act to compel *parties plaintiffs* in the several Courts of this State, where the plea of usury is filed, *to discover on oath, the truth or falsehood of the facts stated in such plea,* or to allow the defendant, in case of refusal by the plaintiff, to establish the facts contained in such plea, by his own oath, *without a bill of discovery.*" The plain object of the Act was to obtain a *discovery* from the plaintiff, of the truth or falsehood of the facts stated in the defendant's plea, in the same manner as he would have been required, in an answer to a bill of discovery in Equity, containing the same facts.

When a bill for *discovery* of usury was filed under the old law, on the Equity side of the Court, and the plaintiff at Law *fully answered* the bill, in other words, when he "*discovered, on oath, the truth or falsehood of the facts*" stated in such bill, in relation to the usury charged therein, the defendant at Law, was remediless, if his witness disclosed, on oath, the *falsehood* of the facts charged in his bill in relation to the usury. If the plaintiff at Law disclosed the *truth* of the facts charged in the bill, in relation to the usury, then his answer would benefit the defendant at Law, but it did not follow, because the defendant at Law charged the transaction to have been *usurious* in his bill, that the plaintiff at Law was bound to disclose the facts to have been as the *defendant charged them.* The plaintiff at Law was bound to answer every *material* allegation in the bill, in relation to the usury, according to the rules and practice of Courts of Equity ; either disclosing the *truth* of the charges, or disclosing the *falsehood* of the same, and when he had done so, that was *all* a Court of Equity would have required of him.

[1.] The Act of 1842 requires the plaintiff, in my judgment, to make *just such a discovery* in relation to "*the truth or falsehood of the facts stated in the defendant's plea,*' as he would have been required to make to a bill of discovery on the Equity side of the Court, and *no other.* The *discovery,* required by the Act of 1842, in relation to the facts stated in the defendant's plea, is a *substitute* for the discovery required by the *old law* on the Equity side of the Court, the *place* and *manner* of obtaining the discovery is changed by the Statute. Under the old law, if the charges in the bill as to the usury, were *fully answered,* and their truth denied, the defendant at Law had obtained a *full discovery* as to the facts

charged, although such discovery did not benefit him. So, under the Act of 1842, if the plaintiff *fully* and *explicitly* answers the several allegations in the defendant's plea, as to the usury, and *denies them all*, the defendant cannot read his affidavit, because the plaintiff has *discovered, on oath, the falsehood of the facts* stated in the defendant's plea ; in other words, the defendant has obtained a *full discovery* from the plaintiff, touching the allegations in his plea as to the usury, in as ample manner as if he had been in a Court of Equity with his bill for discovery, and that was *all* the Act of 1842 intended to give him.    But if the plaintiff shall *refuse* to answer at all, or pretending to answer, *fails* or omits to answer fully as to the truth or falsehood of the several allegations made in the defendant's plea as to the usury, or answers the same *evasively*, then the Court will treat it as *no answer*, and will allow the defendant to read his plea, verified by his affidavit.

The Statute gives the plaintiff the *right* to make the *discovery*, and he is bound to make a *full* and *fair disclosure of all the facts charged*, in the same manner as he would be required to do in a Court of Equity, at his peril, or the defendant will be permitted to read *his* affidavit ; and I would hold, even at the trial, on exceptions taken to the *sufficiency* of the plaintiff's answer, he should be permitted to make it *full*, so as to exclude the affidavit of the defendant, for the Statute evidently contemplates the plaintiff shall make the discovery if he is *willing to do so.*

[2.] I concur in opinion with my brethren, that suits brought by administrators are within the provisions of the Statute.

On the trial of this cause, the plaintiff offered in evidence the following affidavit, as a compliance with the Act of 1842, in answer to the various allegations in the plea of the defendant as to the usury : "Personally came before me, Thomas F. Persons, administrator and plaintiff in the above stated case, who, being duly sworn, deposeth, and saith on oath, that the facts set forth in defendant's plea as to the usury, are not true, and that the contract sued upon is not usurious, according to the best of his knowledge."    The record discloses that the Court below, at this stage of the case, ruled that the foregoing affidavit was in compliance with the Statute, and ordered the same to be read to the Jury.    Afterwards, the defendant offered in evidence his plea, verified by affidavit, to establish the usury.    The plaintiff objected, on the ground that it was not competent for the defendant to

support his plea by his affidavit, after the plaintiff's affidavit had been produced and read to the Jury. The Court overruled the objections, and decided the affidavit should be read in evidence in support of the defendant's plea of usury; whereupon the counsel for the plaintiff excepted. The counsel for the plaintiff then requested the Court to charge the Jury: 1st. That the plea and affidavit of the defendant is not evidence before them that there was usury in the note, the subject matter of dispute between the parties, the plaintiff having filed and given in evidence *his affidavit in compliance with the provisions of the Statute.* 2d. The defendant having introduced no evidence to sustain his plea of usury, the plaintiff is entitled to recover the amount of his note and interest —which instruction the Court refused to give, but instructed the Jury, that the Act of 1842 was, to his apprehension, crude, and difficult of construction, " but it is my opinion, that when the plaintiff, on the requisition of the defendant, makes his affidavit as to the matter of the plea, and *fails* to make any disclosure as to the facts stated in the plea, but is merely *negative* in its character, it is competent for the defendant to read his affidavit as to the facts; that it is admissible evidence to be submitted to the Jury, like other evidence in the case, and of course the credibility of that evidence is exclusively for the consideration of the Jury."

To the refusal of the Court to charge as requested, and to the charge of the Court as given to the Jury, the counsel for the plaintiff excepted, and now assigns the same for error here. The Jury allowed the plea of usury by their verdict, and the question is, whether there ought to be a new trial granted for error in law, appearing on the face of the *bill of exceptions,* and *transcript of the record.* If the affidavit of the plaintiff, containing a *general and sweeping denial of the usury,* without even pretending to answer one solitary *specific charge,* contained in the defendant's plea, (covering about six pages, in giving a minute and precise history of the original loan, the rate of interest taken, and the various renewals of notes, from time to time,) is in compliance with the Statute, then there is error in the charge of the Court to the Jury, and also in admitting the defendant's affidavit; but if the affidavit of the plaintiff is not a sufficient answer to the *truth* or *falsehood* of the many facts stated in the defendant's plea, or if the plaintiff, in the language of the second section of the Statute, has *failed or refused* to make a *discovery,* as provided in the first sec-

tion of the Act, whether the various facts set forth in the plea are true or false as to the usury charged therein, then there is no error in the record, and the affidavit of the defendant was properly read in evidence to the Jury.   I have endeavored to show that the *discovery* sought from the plaintiff, was a *substitute for a bill of discovery in Equity*, and that the plaintiff would be required to answer the allegations in the plea, as *fully* as if the same allegations had been embodied in a bill in Equity ; certainly, the Legislature, in passing this *remedial* Statute, did not intend to adopt a *less stringent* remedy as to the discovery in the answer of the plaintiff, than had been required by Courts of Equity.   What is the rule, in Courts of Equity, which has been adopted and *expressly sanctioned* by this Court in a *usury case*, in which a discovery of the usury was sought ?   This Court held, " an answer must be *full* and perfect to all the *material* allegations in the bill ; it must state facts, and not arguments.   It is not sufficient that it contains a *general denial* of the matter charged, but there must be an answer to the sifting inquiries upon the general subject.   It should also be certain in its allegations, as far as practicable.   To so much of the bill as it is necessary and *material* for the defendant to answer, he must speak *directly*, and without *evasion*, and he must confess or traverse the substance of each charge.   And where there are *particular, precise charges*, they must be answered *particularly and precisely, and not in a general manner, though the general answer may amount to a full denial of the charges.*" *Walker's Ex'r. vs. Walker*, 3 *Kelly*, 309.   The rule is founded in good sense.   The particular and precise facts charged in the plea, may not, in the *opinion of the plaintiff*, constitute usury ; yet the defendant is entitled to have them answered, in order that the *Court may judge* whether they constitute usury in the eye of the law.   Will it be pretended that if the *special allegations* contained in this plea, had been incorporated into a bill for *discovery* on the Equity side of the Court, that the answer of the plaintiff, as exhibited by the record before us, would have been considered *sufficient*?   There is not a Chancellor in the country but would have considered such an answer as a *wilful* and *shameless evasion* of the charges contained in a bill for *discovery* of *material facts*. To consider *such an answer* as a sufficient compliance with the requisitions of the Statute, enacted to compel a *discovery* of the truth or falsehood of the facts stated in the defendant's plea, would,

in my judgment, operate as a *total repeal* of the wise provisions of that Act. It was said the plaintiff was an administrator, and the facts stated in the plea could not be presumed to be within his knowledge. The papers of the intestate would naturally fall into his hands, and he might very reasonably have some *information* and *belief* as to the facts charged. Mr. Justice Story states the rule to be, as to facts which have not happened within the defendant's own knowledge, that he must answer as to his *information and belief*, and not to his *information merely*, without stating *any belief*, either one way or the other. *Story's Eq. Pleading*, 656, *Section* 854. The answer of the plaintiff not being a sufficient compliance with the Statute, the Court below was right in treating it as *no answer*, and admitting the affidavit of the defendant; for we have the authority of Lord Eldon, in *Gregor vs. Lord Arundel*, (8 *Vesey*, 88,) in saying that "the general doctrine certainly is, that an answer that is *not sufficient*, cannot be said in a correct sense, to be *an answer*." But it is said, the Court below ruled this answer of the plaintiff was a compliance with the Statute, and permitted it to be read to the Jury; and afterwards allowed the defendant to read his affidavit as evidence. The record does so state, but the same record also shows, that the Court, in the progress of the trial, became convinced of its error, and corrected it, as we are bound to infer, from the charge of the Court to the Jury, and from the fact that the Court admitted the defendant's affidavit in evidence; for if the Court had continued of the opinion that the plaintiff's affidavit was a compliance with the law, it would not have admitted the affidavit of the defendant to have been read in evidence. I also infer that the Court changed its opinion in the progress of the trial, from the fact of its refusing the instructions prayed by the plaintiff's counsel to the Jury, and charging them, "that where the plaintiff, on the requisition of the defendant, makes his affidavit as to the matter of the plea, and *fails to make any disclosure as to the facts* stated in the plea, but is merely *negative* in its character, it is competent for the defendant to read his affidavit as *to the facts*." This charge of the Court to the Jury certainly does not look much like a *recognition* of the *sufficiency* of the plaintiff's answer, if I can understand the plain import of the words used by the Court in that charge; for although the affidavit had been read in evidence in behalf of the plaintiff, yet the Court, very properly, in my judgment, instructs

the Jury, in effect, that it is *no answer,* and so the Jury must have considered it.   Perhaps it would have been more regular to have rejected the affidavit from the Jury ; but it was rendered entirely *harmless* by the charge of the Court to the Jury, and even if the Court *did err* in admitting it in evidence, *that error* was in favor of the *plaintiff in error here,* who has no cause of complaint on that account.   This Court held, in *Peck vs. Land,* 2 *Kel.* y, 17, that it would not grant a *new trial,* although the Court below did commit error in favor of the *plaintiff in error,* when ʻthe verdict was not contrary to law ; and why should it ?   The plaintiff in error here has not been injured by the reading in evidence his *own affidavit,* improperly, *in his own favor.*   The *fair* construction, which I think, ought to be given to the action of the Court below, is, that when the plaintiff's affidavit was *first* offered·in evidence, the Court was of opinion it was a compliance with the Statute, but during the further progress of the cause, the Court came to the conclusion it was not in compliance with the law ; and instructed the Jury to that effect, and in my judgment, the verdict was right upon the law and facts of the case, as presented by the entire record.   Something was said, in relation to the right of *cross examining* the plaintiff, where his affidavit was not *full.*   The answer to that view of the question is, that the plaintiff.cannot be *cross examined* until he files a good and *sufficient answer as to the facts stated in the plea.*   The second section of the Act declares, that if the plaintiff shall *fail* or *refuse* to make *the discovery,* the defendant may make his affidavit as to the *truth of the facts* in his plea, and the same may be read in evidence; then, the defendant would be the party to be *cross examined.*   To entitle the plaintiff to read his affidavit as to the truth or falsehood of the facts stated in the defendant's plea, and be *cross examined,* he must first make a *full* and *complete answer* to all the allegations in the plea in regard to the usury.   Until he has done so, *his* affidavit cannot be read, nor he cross examined ; to permit it, would deprive the defendant of *a right* which the Statute gives to *him,* when the plaintiff *fails* or *refuses* to make the *discovery* required.

My construction of the Act of 1842, then, is, that it was intended to compel a *discovery from the plaintiff,* in the language of the first section, as to whether or not, the contract upon which the suit is brought, was usurious, and also, whether the *fact* or *facts,* set forth in the defendant's plea, *are true or false, as to the usury,*

in as *full* and *ample manner* as he would be required to do in a *Court of Equity*; that when the plaintiff shall have made *such* a *discovery*, then the defendant cannot read his affidavit to the Jury, although the plaintiff denies the contract was usurious, and also denies *all the facts* set forth in the defendant's plea, as to the usury, for the reason the plaintiff has made a *full discovery*; and the legal presumption is, that he has told *the truth*, being the defendant's witness under the Statute; that if the plaintiff shall *fail* or *refuse to discover*, whether or not the contract sued on is *usurious;* or shall *fail* or *refuse to discover*, whether the *fact or facts* set forth in the defendant's plea, are true or false, as to the *usury*, in as *full* and *ample manner* as required on the *Equity side of the Court;* then, the defendant is entitled to read in evidence, *his* affidavit, as to the truth of his plea; and that in this case, the *discovery* made by the plaintiff, in his answer to the *many specific allegations, as to the usury* stated in the defendant's plea, would not, in a Court of Equity, be held a *sufficient* answer, and would in that Court be treated as *no answer* to a bill of discovery, containing similar allegations—and that he has *failed* and *refused* to make *such a discovery*, in relation to the alleged usurious contract sued on, and in relation to the *facts* stated in the defendant's plea, as to the·usury, as is required by the first section of the Act; and that the Court below did not err in permitting the affidavit of the defendant to be read in evidence, nor in its charge to the Jury, as to the *insufficiency* of the plaintiff's answer; and that if the Court did err, in allowing the plaintiff's affidavit to be read in evidence, during the progress of the trial, it was an error *in favor of the plaintiff in error here*, of which he has no cause of complaint, as was ruled in *Peck vs. Land*, and in my judgment, properly so ruled, both upon principle and authority. In every view which I have been able to take of this case, as presented *by the record*, I am of the opinion the judgment of the Court below should be affirmed.